is United States v. Kellogg, No. 05-1893, Mr. Schweitzer and Weber. Good morning, Your Honors. My name is Brett Schweitzer from the Federal Defender's Office in Philadelphia. I'm here representing Mr. Kellogg in this appeal. At this time, I'd like to reserve three minutes for rebuttal. Go ahead. Thank you, Your Honor. In many ways, I think the 404B evidence in this case, let's start off with the, are you hanging your hat on the issue of the cross-examination of Dr. Malik or Mr. Pennington more? It would seem to me you're really focusing more on Pennington. Is that correct? The question posed to Pennington was more overtly, clearly a guilt-assuming hypothetical. Yes, so that was in a sense more problematic. I think that the question to Dr. Malik was clearly a functional equivalent of the same question. I don't see that at all. How do you, yeah, how do you say, do you know anything about his business and turn that into a guilt-assuming hypothetical? Because the government had just put on three weeks of evidence of what they asserted were improper laboratory practices and fraudulent laboratory practices. The defense first witness gets up on the stand and says, I think Mr. Kellogg has a sterling character. And the prosecutor says, yeah, but did you know about how he ran his lab? Now, that cannot. Do you know anything about his business? I think the exact testimony, Your Honor, was, do you have any knowledge about the way Mr. Kellogg ran his lab? And that's at 1999 in the record. So I would suggest that we can't look at this in isolation off the transcript. May I ask a question, then, Mr. Switzer? Are you suggesting that we lay down a rule that says that the prosecution can't ask a witness if they know something about, if certain aspects of the defense, the defendant, are within the knowledge of the opinion and character witness? Absolutely not, Your Honor. This is relevant evidence. The correct question here could have been, does the witness know Mr. Kellogg professionally? Has he ever had dealings with the lab? Those are questions that probe knowledge, which is a legitimate issue here. But they're not questions that can be fairly read, and I would argue only susceptible to one reading, particularly in light of the Pennington question, which came only minutes later, as a guilt-assuming hypothetical. So that's what, it's the functional equivalent of, say, of the Pennington question to ask, do you know how he ran his lab? In this context, yes, Your Honor. And that's what the Barta court held. The Barta court was faced with two guilt-assuming hypotheticals, and where's the guilt that's assumed here in that question to Dr. Malik? The guilt is, the question to Dr. Malik, the guilt embedded in that question is, did you know that? Did you know about those laboratories? So in other words, if I was the prosecutor and I said, do you know the protocols that he used in his lab? You're telling me that's guilt-assuming? You know how he ran his lab in 1998? No, I think everything turns on the question here, and I think subtle variations in the question make a difference, particularly in the context of the case. Now here, if you had a question where you said, are you familiar with his business practices? Did you ever do business with the lab? Do you have any knowledge about the way Mr. Kellogg ran his environmental lab back in 1998? No, I think that's more on, do you have any, basically, it's an effect saying, do you understand how this guy operated? That's correct, Your Honor, and I think the question you posed is essentially what was in the record, and I think that's erroneous. Now this court in Curtis, because the fair reading of the question is in the context here of the record, is that the witness doesn't know all of these facts that the government just put on the record in their case in chief, especially since only minutes later, Dr. Pennington gets on the stand and the question becomes, you know, you're spending a lot of time on something you probably could have just hunted and gone straight to Pennington, but where is there in the question to Dr. Malik that says, in effect, have you heard that Dr. Malik has violated the law? That's really what guilt-assuming hypothetical, it's sort of like, you know, do you understand that this guy is really guilty and therefore, would your opinion change? How, I mean, I'm not sure if you could have phrased the question much better, to be honest with you. There's no doubt, Your Honor, there's a continuum here. As I said, the Pennington question is more overtly guilt-assuming. There's no question about that. I would only point out that this court in Curtis has specifically said that cross-examination of character witnesses requires very precise analysis. What was the question to Dr. Pennington? Because if we write an opinion on this, we don't want to bar prosecutors from some broad exploration of the basis of the character witnesses' testimony. Of course not, Your Honor. Knowledge is relevant. That's an issue that you can go into. I'm happy to move on to Dr. Pennington, which was a squarely and overtly guilt-assuming question, which is namely, does the witness know, if the witness were to know that a person, you know, used one laboratory analysis method and then knowingly reports out a different method used, would that change your opinion of the witness's character? That's the question that was posed to Dr. Pennington. Is this a kind of error that can be harmless? It surely can be harmless in some situations, and the facts and the factors that courts look to regarding that are numerous and none of which adhere here. Do you have a case, Mr. Switzer, where it's ever been held to be less than harmless? Has there ever been reversals on this? Right. Sure, yes, and that's in our brief Condelaria of the Fifth Circuit, I believe. Mason in the Fourth Circuit reversed on this issue. What was the question? It isn't really fact-specific as to what the question was. In those cases? In any case. That's correct. It depends on the nature of the question. That's the teaching of Curtis, I believe, in this court. Look at the question carefully. This is a sensitive area, and it also turns on the evidence at issue here, and we have to remember that this is the government's burden to show beyond a reasonable doubt that there's... If you start off with a jury being told that you can only convict when you are convinced beyond a reasonable doubt the person has committed the crime that's alleged, when you have a question being asked in a... How long was this trial? Approximately three weeks. And one question which takes a few seconds in a three-week trial, and immediately after that question you have the district court sua sponte giving an instruction to the jury as to how they're to deal with the types of cross-examination on reputation evidence. Where is the harm? The harm is... Even if we assume for the moment, even if we assume for the moment that the question asked of Mr. Pennington was somehow guilt-assuming. The harm is the limiting instruction dealt with... Did not deal with the prejudice here, which is the undermining of the assumption of the assumption of innocence. It had nothing to do with that. So the limiting instruction here weighs nothing in the harmless error analysis. The only thing this instruction said was you can use this as to opinion, but you can't use this as to reputation. Can we say beyond a reasonable doubt that it was not affected? I believe that's the standard. And yes here, because the evidence, again, this is, you know, the evidence of intent here was by no means overwhelming. We had a fraud, allegedly, where you had, you know, no pecuniary gain to the defendant. Where you had methods that were, everyone agrees, were essentially equivalent. And you had a situation where there was testimony on both sides about knowledge and intent. You're sitting in the jury box and the person's on trial and the government is alleging from minute one that what happened with respect to the defendant is that he purported to be using a more comprehensive analytical method when in fact he wasn't. And he did this repeatedly. And I'm going to show to you jurors that that is what he did and that that is a violation of the law. If at some point in the course of three-week trial you're sitting in the jury box and you're awake and somebody says, sir, would you agree with me that a person who knows that a laboratory used one particular analytical method but then who reports out a completely different analytical method on final reports to its customers, would your opinion be different? You're telling me you're all of a sudden going to wake up and go, oh, now I get it, he's guilty. Well, your honor, respectfully, harmless error can't come down to a word count. This, we have to look at the totality of the evidence as to intent. That's what I'm talking about, is the totality of the evidence. And you're certainly not surprised by that as a juror, are you? I'm sorry? You're sitting in the jury box, you're not surprised by that. That's exactly what the government's been claiming all along. Well, I think the evidence of intent here is not three weeks of evidence of intent. You know, a lot of this was evidence that was put on that had nothing to do with intent. When you boil down the case on intent, there's relatively, there's a small amount of evidence at issue. And when the defense gets up and puts on its case, marches up its first witness, yeah, I think the jury is paying more attention there than the, you know, the fifth or sixth or twelfth customer that the government put on. All of a sudden, it's the defense case. Here we go, let's see what they have to say. Witness number one, he's a stellar character, he's got a stellar character. Okay, well, you didn't know he was guilty of all this, did you? Okay, that's unfair. That's patently unfair prejudice that really can have an effect. I would say it's patently unfair prejudice, although not couched in quite those balder terms. I mean, the rule you're arguing for isn't uniformly held, right? I'm sorry, uniform? Then Judge Ginsburg, Justice Ruth Bader Ginsburg for the D.C. Circuit said, if somebody's going to get up and give their opinion, the government's entitled to ask what the limits and contours of that opinion are, right? Yes, white case supports the use of a hypothetical in this, as to an opinion witness, standing alone among the five circuits that have looked at this, and importantly, when you look at the white case, two of the cases it cites have been, well, the conclusion from which she draws, the conclusion she draws from two of the cases she cites has been reputed by the very circuits that held, that decided those cases. And there's no independent reasoning in white whatsoever. Moreover, Judge Gardner gave you plenty of independent reasoning, right? I mean, the district judge here laid out all the logic behind the ruling he gave you, right? And unfortunately, with due respect to Judge Gardner, it was wrong. All of the discussion, or 90% of the discussion on this issue was on the reputation versus the opinion, and whether a meaningful distinction can be drawn there. And Judge Gardner relied on this court's decision in the drawing of that sort of a line. In fact, what Curtis says is that under Rule 405A, specific acts, instances of conduct which can be inquired into in cross-examination need to be established facts. These are not... Doesn't Curtis say something? Well, let me ask you this. My understanding reading Curtis was that the court was concerned that the district court had cut off the defense's opportunity to explore the contours of the opinion testimony that were being given. Isn't that right? I think the primary issue was, first of all, there's beyond the scope of direct issue. Yeah, but wasn't that what was going on? I mean, the government asked certain questions, and then when the defense tried to re-explore by putting some further facts or hypothetical facts to the witness, the district court said, you can't do that. That was the basis of reversal, wasn't it? Well, that was a problem that the court found in the case. I would not say that the case is limited to that rationale. I mean, don't you see some irony in taking Curtis and trying to say that what this court was bothered by in Curtis, which was cutting somebody off from exploring what the contours of an opinion witness's opinion are, should be now used to say, yeah, but the government can't do it. Can't use it against the defense, but we can use it against the government. I don't... Respectfully, Your Honor, I don't think that that's reading the entirety of Curtis. I think Curtis really stands for the proposition that, first of all, if the witness is asked about reputation evidence, you're not to cross on opinion evidence. In the situations where you do have a guilt-assuming hypothetical, there it was in a reputation context, it's improper because of a 405A problem where the conduct isn't established. And that holds just as true in opinion. And what's more, why would there be a distinction between opinion and reputation evidence here? If you were to look at the federal rules, which I apologize, Your Honors, for disturbing you with a late letter yesterday, but if you look at the federal rules, the federal rules say if you've got a lay opinion witness, you're not permitted to ask hypothetical questions of that witness. That's what these witnesses are. That's all they were. Lay opinion witnesses as to character. So the federal rules jive with this. But even assuming you're right, the question comes back to what Judge Roth asked in the beginning. Where's the harm? The harm, thank you, Your Honor. The harm, again, is the fact that the limiting instruction here does not weigh in favor of a finding of harmless error. And you have to look at the totality of the evidence of intent. Where is the harm? The harm is that this was, Your Honors, appraisal of the strength of this defense is one thing, but I would suggest it should not be substituted for what the jury could have thought. This was a very important point in the defense. In an intent case, as we all know, there's no direct evidence of intent. How do you show intent? How do you rebut evidence of intent? This is critical evidence. The District Court Judge Gardner so instructed the jury. You can find, you can acquit based on this evidence alone. It's true. Now the government disparages character evidence in their brief, and I don't think that's fair. I was a trial judge for five and a half years, and I have watched juries listen to character evidence, and I don't think many cases rise and fall on the character. But that may or may not be true, Your Honor. I simply don't know. I'm not in a jury room. But again, if we're sort of debating here, where, you know, is it far enough? Where's the scale tip? Then it comes down to a burden of proof issue. Here, the government has the burden of proof beyond a reasonable doubt, and I would submit that they cannot meet that burden on this record. That certainly doesn't mean that every guilt-assuming hypothetical ever asked is going to lead to a reversal in this circuit. Absolutely not. Here, there's a very particular set of facts, context. There was no objection, was there? Oh, there most certainly was. There were pages of transcripts debating the propriety of this, which led to the district court. As soon as the question was asked of Mr. Pennington, counsel got up and said, I object. In fact, with Dr. Malik as well. Dr. Malik was the first witness, and Mr. Pennington was the second. Objections is to both questions. And, you know, what really, you know, I think what's really interesting here is if we look at the district court's rationale, as Judge Jordan had referred to earlier, we can see that it's not clear to me at all that had the judge not thought that this was the prosecutor's only arrow in his quiver, that he would have ruled this way. In other words, what Judge Gardner said was, well, if he can't ask him this, he can't ask him anything. Because under Rule 405, specific instances of conduct on cross-examination of character witnesses, you're limited to prior convictions. That's what Judge Gardner said. He was wrong about that, unfortunately. But that's, that was the prelude to his allowing this testimony to come in. Because he thought it's not fair to deprive the government of every punch it has. Or essentially giving, leaving them with no punch at all. Do you think that this is relevant evidence? I mean, I understand your argument clearly from your briefs in here that it's prejudicial, in fact unduly prejudicial, and indeed intrudes upon due process. But those are arguments which you make understanding that it's at least relevant what the universe of knowledge is that a person who gets on the stand and says, I hold a good opinion of the defendant, is. I think that depending on how the question is tailored, these types of questions can be probative of knowledge. I don't think the Pennington question is probative of knowledge at all. Because it's assuming facts that are not, that have not been established. If this, if this were a different situation where there was some established fact by some other whatever, and do you know about that? Okay, that's probative of knowledge. Here I don't think it's probative of knowledge, the Pennington question. It is probative of bias. I will grant you that. If the witnesses here had said, stand by my man, I'm not, you know, to hell or high water come, I am not moving from my opinion as to character, that's pretty probative of bias. You know, that doesn't mean that it's admissible because of the intrusion on the due process and all the other reasons that are cited in our brief. Why don't we hear from him? Okay, thank you, Your Honor. Counsel, may it please the court, I guess if you call a question, Seth Weber for the United States, thank you. I guess if you call a question a guilt-assuming, hypothetical enough times, maybe somebody will buy into it. This court, from what I just heard, is definitely not buying into the fact that when you ask a character witness who gives their opinion on a defendant being law-abiding, do you know anything about the way he ran his business in 1998, the relevant time period? That would not be assuming guilt of anything and is an appropriate and proper question. The second question, Mr. Pennington is also, despite the constant labeling as a guilt-assuming hypothetical, which has been looked at with a cautious eye by many circuits, was not a guilt-assuming hypothetical that has been sanctioned by the courts. The reasons are as follows. First of all, the prosecutor did not ask the witness to assume that the defendant was guilty of anything. Interestingly enough, in every single guilt-assuming hypothetical case, the prosecutor asked the witness, would you change your opinion if you knew the defendant, Mr. Kellogg, had done this? Or if it were proven to be true that Mr. Kellogg did this, would that change your opinion? But here the defense was that Kellogg did not realize he was reporting to customers that tests other than the tests that were in the report were the ones that the intent was. And if we decide that this is a guilt-assuming hypothetical, what should be the position of this circuit on whether we're going to permit it? Should we say we don't like it, we won't permit it, but it's harmless here? Should we say it's so disruptive of due process that there ought to be a reversal? Should we say we don't want to follow the other circuits that have said we will not permit guilt-assuming hypotheticals? Well, I think this court has a lot of options. The first being to say this is not a guilt-assuming hypothetical that has been looked at askance by all of the other circuits. It is not the situation where the defendant's name was mentioned. It is not the situation where the defendant is accused in the question of committing a crime. Do you really think that the jury didn't understand that to be the import of the question, Mr. Weber? I mean, given the time, maybe I think you're probably best to leave that one behind. Go to the next step. If it is a guilt-assuming hypothetical, despite the fact that the defendant's name wasn't mentioned, or the other aspect of the other cases is that you ask in the question to assume the facts of the present case are true, which was not done here, then it is harmless. And the standard that this court should use is not the constitutional standard, since no substantial right is involved, but really should be the evidentiary harmless error standard. I got to stop you. Are you honestly saying that this prosecutor asked that question as a purely hypothetical hypothetical matter, divorced from what was going on in the courtroom, or did the prosecutor ask the question because it was exactly the government theory of the case? I can answer with full knowledge that the government prosecutor asked that question because it had relevance to the case. Okay. But the government prosecutor asked that question, not asking the jury to assume guilt or mentioning the defendant's name or any specifics of the case. And I think that this court has to give juries at least some deference to know that, hey, you know, he's asking this question about, would that change your opinion? And we've heard this evidence. The trial judge is not going to let purely irrelevant evidence come in. And the way you're talking about this has no connection with the case, then it's not relevant. I understand. If it's relevant, then it is directed at the elements of the offense that are being presented to the jury. And certainly you aren't introducing irrelevant questions, are you? No, Your Honor. This is clearly relevant to the case. The question is, does this relevant question become the label guilt-assuming, as has been found in all of the other cases? And interestingly enough, in Curtis, that case dealt only with a witness who gave reputation testimony, not opinion testimony. And the prosecutor on cross asked the witness, would it change your opinion? So there's a divergence of the facts between Curtis and this case. And I don't think that this court in Curtis actually dealt or decided whether or not, if it were an opinion testimony, would those guilt-assuming hypotheticals be proper or improper? And could the jury, you know, take a step back and go, oh, wait a minute. Those sound similarly to the facts of this case. You wouldn't ask it if they weren't, would you? No. Correct, Your Honor. So what's the answer to Judge Roth's question? Assume for the sake of discussion that when we see the question to Mr. Pennington, it sure, you know, waddles and quacks like a guilt-assuming hypothetical in our view. What is the legal ramification of that? Should we say to the courts of the Third Circuit, don't ever do that again, it's error? Or should we take the view of now Attorney General-designate Mukasey and say, well, it's relevant, you know, it's not necessarily a bad thing? Or what should we be doing? I think this court should adopt the concurring opinion of Judge Mukasey in Oshutz. But he said in that case that any harm from a guilt-assuming hypothetical can be negated by a jury instruction or a defendant can determine guilt. But that didn't happen here. This court gave an instruction, but it didn't focus in that, hey, look folks, no matter what they say, only you can determine guilt. Correct, Your Honor. And I think one of the reasons that the judge didn't go so far in this case is because it wasn't so specific to the guilt-assuming hypotheticals in other cases that it wasn't so specific. And I think Judge Mukasey said that, yes, you can ask those questions because a jury has to determine how well the witness knows a defendant and also by what standard the witness judges the defendant. And because these character witnesses testified about the defendant being a law-abiding person, the government's hands are tied sometimes if there are no prior convictions to ask about. And in asking about character under 405A, there is some latitude that should be given. And I think in this case, the prosecutor's question, which did not mention the defendant's name, did... So what if it didn't mention his name? Obviously, we know who he's talking about. To me, I think that is an argument which borders on the ridiculous. Your Honor, I certainly don't mean to make an argument that borders on the ridiculous. But every single case cited by the appellant and that has been decided so far, the prosecutor comes right out, says the defendant's name, and then says, you know, in fact... Mr. Weber, I think you can take it as a given that that doesn't have a lot of traction. So you ought to let that go. You just ought to let that go. All right, we're going to let that go. You'll feel better. I guess the question comes down to, if that is not proper, then how can a prosecutor test character witnesses' opinion of being law-abiding if the defendant doesn't have any criminal convictions? You have to ask those character witnesses, well, what types of things are you basing your opinion on that he's a law-abiding person? That's okay. I mean, the two questions that Judge Mukasey said you can't ask, I think you can ask. You know, how well do you know the defendant and what is the basis you use for forming your judgment? What is the standard you use for forming your judgment? Now, to me, those seem like reasonable questions to determine the basis of the witness' knowledge. Here, the question was asked of the witness. The witness asked the prosecutor a question. The witness asked the prosecutor, is this a hypothetical question or is this specific to the case? And the prosecutor said, I'm asking you a hypothetical question. And the witness then said, my opinion would be different. And the questioning ceased. So, I think in this case, where there's no prior convictions to ask about, there should be latitude given to a prosecutor to ask specific types of questions like this. How about a question like the one asked to Dr. Malik? How about a question that simply said, have you been to the lab? Do you know what the business practices at the lab were in 1998? And establishing that a witness doesn't know them without saying, in effect, do you think that somebody who cheats is a cheater? Well, I think the prosecutor in this case looked at those two witnesses differently because, as I recall, Dr. Malik was a dentist. He was a social friend. And a social friend. So, the prosecutor limited that question to, do you know anything about the way he ran his business? No, and sat down. One question. But the other witness, Mr. Pennington, was a chemist, an analytical lab chemist. So, he knows more about the business. And I think that entitled the prosecutor to go a little bit further and ask him the hypothetical that was asked. That is, if a person knows one method's used but reports out another, would there be a problem? Yeah, but isn't there a way to get that type of questioning in without going into the type of, without doing it the way it was done here by the prosecutor? You would ask them generally, how do you go about your business? How do you do, how do you report out results? When you say you've used A, have you used A, is it important for you to say that you've used A when you say you have? Yes, Ron. The answer to that question is yes. And perhaps the question was inartfully asked during the trial. I'm not sure how, in one sense, inartful it was. He was trying to make a point. And he was trying, as to Pennington, there was, in effect, an assumption that would, in your opinion, change the guy's guilty. You know, and sometimes you don't even need to cross-examine. I mean, you must, in your experience trying cases, have an idea of the marginality of character witness testimony. And, you know, maybe you're better off just letting the guy say it and get him out of the courtroom. Well, I think the prosecutor in this case saw an opportunity here because it wasn't just the run-of-the-mill character witness, like the first witness, Dr. Malik, who was the defendant's neighbor and his dentist. Here, you had a chemist that was in the biz, so to speak. And so the prosecutor took a shot and asked, well, if you knew that one another? Well, actually, if you had asked... That's not what he asked. Not what he asked. If this prosecutor had asked that question... We wouldn't be here. Yeah. I don't think we'd be having this discussion. It wasn't, if you, Mr. Pennington, a person who's got some experience in this field, test using EPA Method X, would you then report with EPA Method Y? It was, if you assumed somebody was cheating, would you call them a cheater? That was the basic gist of the question. Very, very different. And you're right, Your Honors. The question was, would you agree with me that a person who knows that a laboratory used one particular analytical method, but who reports out a completely different method on final reports to its customers, would your opinion be different about that person being a law-abiding person? That was the question. And I think particularly where a defendant has no prior criminal record, there may be ways to ask questions to test the person's allegiance to the defendant. Will this person say he's a great guy no matter what? Because he's his neighbor? Because he's his dentist? Because he knows him and plays tennis with him? Or will this person say, well, no, if he did something wrong, then, yeah, that is wrong. And I think that's what the prosecutor was trying to do with this one single question in a three-week jury trial. My question was, though, should the Third Circuit as a circuit say, we will not permit guilt-assuming hypotheticals. We will consider whether they are harmless error? Yes, I think the Third Circuit should say that. The question is, and I know I may be arguing against the fact here that the court has, but the question is, was this a guilt-assuming hypothetical? The question is, if we say that, is it victim or not under the circumstances of this case? Correct. I understand. And I hope I answered the court's question. Yes, you did. Thank you. Mr. Spicer? Because we gave you well over 20 minutes, your opening. I will be short. I'm not going to discuss Dr. Malik. This was not a mistake in an inaugurally asked question. This was a torpedo at a character witness, at the little evidence the defense could put on affirmative evidence of lack of intent. So I think we should sort of call a spade a spade here. If we're doing this, let me ask you something. I know I'm taking your time, so I'll be pretty quick. Do you think that, well, you heard your opponent characterize this as one question, one answer for focusing on Pennington out of a three-week trial, where the gist of the question is, if you knew somebody was lying, would you think less of them? Is it your view that the jury would be so taken with that that they would ignore the court's instructions, careful instructions, about proof beyond a reasonable doubt? Yes, because the jury is tricked into thinking that the witness has actually changed his opinion based on total allegations, nothing more. I mean, that's why this is a due process case, because that strikes to the heart of it. And Judge Mukasey, when he's finding harmless error, says the most important factor in immediate instruction on this, on the fact that this is not under due process, this is for the jury to decide. Not an instruction, a boilerplate at the end of the trial. Now, I would just briefly, in the minute and a half I have left, I would like to hear a question. As a matter of fact, was this mentioned at all in oral argument at the close of the case? Was the closing argument to the jury, did anybody say boo about Mr. Pennington's opinion at being one way or another? In candor, no, Your Honor, but it doesn't need to be. I mean, this was a dramatic moment in the courtroom. It was so dramatic, and you're a prosecutor, when you bring it up? I don't think you have to. I mean, there's a fine line between piling on, I'm not a prosecutor, but I would imagine there's a fine line between piling on and letting the argument make itself from the witness stand, and I think that's what happened here. And now, we're not looking at this again in isolation. In terms of the harmfulness of the error here, we haven't talked about the all this evidence of negligent laboratory practice that's coming in now on appeal, on a fraud theory of relevance under 404B. When we literally have the government accusing Mr. Kellogg of literally poisoning the well of all this drinking water evidence, this is an issue that we have to look at at the prejudice level as, you know, affected by prejudice and the other issues in the case, I would submit. And that prejudice from the 404B was extremely substantial. He is poisoning, or allowing to be poisoned, or not telling you that your drinking water is being poisoned. Thank you. Thank you. Thank you to both counsel for joining us today.